UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY CARMEN GOMEZ,

                Plaintiff,            Civil Action No. 3:18-cv-11738
                                              Honorable Robert H. Cleland
v.                                         Magistrate Judge David R. Grand

NANCY A. BERRYHILL,
*Acting Commissioner,*
*Social Security Administration*,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [12, 14]

Plaintiff Mary Carmen Gomez ("Gomez") brings this action pursuant to 42 U.S.C. § 405(g) and 42 USC § 1383(c)(3), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). (Doc. #1). Both parties have filed summary judgment motions (Docs. #12, #14), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. #3).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Gomez is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #14**) be **GRANTED**, Gomez's Motion for Summary Judgment (**Doc. #12**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.     REPORT

### A. Background

Gomez was previously found disabled as a child on February 1, 1998, but upon attaining the age of eighteen, her benefits eligibility was redetermined, and, in a decision dated, March 18, 2004, she was deemed no longer disabled under the adult standards. (Tr. 90-96). More recently, Gomez again applied for disability benefits; she filed for DIB and SSI on July 27, 2015, and August 8, 2015, respectively, alleging a disability onset date of January 16, 2013. (Tr. 280-91). Gomez now alleges disability due to diabetes, kidney disease, bipolar affective disorder, and anxiety. Her application was denied initially on November 5, 2015. Gomez then timely requested a hearing, which was then held on April 18, 2017, before Administrative Law Judge ("ALJ") Rita Elizabeth Foley. (Tr. 31-86). At the hearing, Gomez, represented by counsel, testified, as did impartial Vocational Expert ("VE") Timothy Shaner. (*Id.*). On June 15, 2017, the ALJ issued an unfavorable decision (Tr. 13-25), which Gomez then appealed on August 7, 2017. The Appeals Council denied review on March 28, 2018, and Gomez filed the instant complaint thereafter.

Gomez has a high school diploma but has no certifications or training in skilled trades. (Tr. 39). In 1998 Gomez had a summer job as a fifteen-year-old at a farm and was employed through a temporary staffing agency in 2010. (Tr. 38). Her total income in 2010 was $60.00. (*Id.*). Gomez does not have a driver's license. (Tr. 42). She gave birth to twins via an emergency c-section in January of 2013. (*Id.* at 46). The twins currently reside with their grandparents, but Gomez testified that she is working on having them live with her again. (*Id.* at 56). Gomez testified that on a typical day she has trouble sleeping, gets up, showers, takes her medications, watches television if she does not have an appointment that day, and takes four to five naps throughout the day. (Tr. 49-50). Gomez testified that she is able to pick up a gallon of milk, a coffee cup, and a

paper clip, but that she would be afraid of dropping each. (Tr. 56-57).

The Court has thoroughly reviewed the record in this matter, including Gomez's medical record, Function Report, Disability Reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### B. ALJ application of disability framework

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can

>perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Gomez is not disabled under the Act. At Step One, the ALJ found that Gomez had not engaged in substantial gainful activity since July 24, 2015. (Tr. 15). At Step Two, the ALJ found that Gomez has the following severe impairments: diabetes mellitus, diabetic retinopathy, stage 1 chronic kidney disease, nephrotic syndrome, osteoarthritis of the left knee, lumbago, chronic obstructive pulmonary disease (CPOD), obesity, bipolar affective disorder with depression features, and anxiety. (*Id.*). At Step Three, the ALJ found that Gomez's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 16).

The ALJ then assessed Gomez's residual functional capacity[1] ("RFC"), concluding that she is capable of performing sedentary work, except that she is limited to sitting for eight hours out of an eight-hour workday with normal breaks and the ability to get herself to and from the restroom and breaks; requires the option to sit or stand alternatively at will every 20-30 minutes while remaining on task; no climbing of ladders, ropes, or scaffolds; no kneeling or crawling; occasional climbing of ramps or stairs, stooping, crouching, and operation of foot controls on the

---

[1] The ALJ explained that the prior ALJ's finding concerning Gomez's RFC is binding absent evidence of an improvement or change in condition since the prior hearing. (Tr. 18). However, the ALJ found that there had been a change in Gomez's condition since the prior decision, and she therefore went on to develop her own RFC based on the present record. (Tr. 18-23).

left; frequent handling, fingering, and feeling bilaterally; no concentrated exposure to environmental irritants such as fumes, odors, dusts and gases and poorly ventilated areas; no exposure to unprotected heights; work is limited to simple, routine and repetitive tasks, performed in a work environment free from fast-paced production requirements, involving only simple, work-related decisions, and with few, if any, workplace changes; can interact with the public only occasionally; and would be off task for 10% of the workday in addition to normal breaks. (Tr. 18).

After determining that Gomez had no past relevant work, at Step Five, the ALJ found that there are jobs that exists in significant numbers in the national economy that she could perform given her RFC. (Tr. 24). Accordingly, the ALJ concluded that Gomez was not disabled under the Act. (Tr. 25).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an

examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**D. Analysis**

In her motion for summary judgment, Gomez argues that the ALJ erred: (1) by "finding that she was not as limited in interacting with others as the psychological consultant indicated"[2]; and (2) in adopting the VE's testimony regarding "other work" that could be performed by someone with her RFC. Each of these issues is addressed below.

> *1. The ALJ's Omission of a Coworker Limitation in the RFC is Supported by Substantial Evidence, and the Sentence within Her Accompanying Analysis Regarding a Coworker Limitations was a Typographical, or Scrivener's Error that Does Not Require Remand.*

---

[2] While this is how Gomez captioned her argument (Doc. #12 at 12), as discussed below, in reality she mounts no substantive challenge to the ALJ's handling of the consultant's opinion, and instead is merely challenging an internal inconsistency in the ALJ's decision which does not merit remand.

6

As noted above, the ALJ determined a very restrictive RFC for Gomez.  One aspect of that RFC is in issue – specifically, the portion limiting Gomez to "simple, routine, and repetitive tasks, performed in a work environment free from fast-paced production requirements, involving only simple, work-related decisions, and with few, if any, workplace changes, and can interact with the public only occasionally."  (Tr. 18).  Clearly, the ALJ did not include any coworker limitations in Gomez's RFC.  However, a few pages later in her decision, the ALJ wrote, "Thus, coworker limitations are necessary, and [Gomez] would be capable of interacting with the public occasionally."  (Tr. 22).  But as discussed below, the ALJ's detailed analysis leading up to this statement makes clear that she actually determined a coworker limitation was *unnecessary* – as reflected in the RFC.

To determine the RFC, the ALJ gave partial weight to the State agency psychological opinion from Barbara Jones Smith, PhD, dated October 14, 2015.  (Tr. 107).  Adopting the prior ALJ determination from June 12, 2004, Dr. Smith had opined that Gomez was limited to simple, unskilled work requiring no more than 1-3 step instructions; low-stress work that is not production oriented; not in close proximity to coworkers; and not in direct contact with the public.  (Tr. 107).  The ALJ considered Dr. Smith's opinion as follows,

> A State agency psychological consultant prepared an assessment of the claimant's mental functional capabilities on October 14, 2015, finding [Gomez] capable of simple, unskilled, low-stress work with no more than 1-3 step instructions, **not in close proximity to coworkers**, and not in direct contact with the public.  The undersigned gives partial weight to the State agency psychological opinion.  Specifically, considering the clinical findings on the mental status examinations by Dr. Pai, [Gomez] has the capability to perform simple, routine and repetitive tasks with no fast- paced production requirements, only simple, work-related decisions, and few, if any, workplace changes.  However, **the social limitations suggested by the State agency are not supported**, as she does not appear that socially limited by her own admission. (Exhibit 3E).  Thus, **coworker limitations are necessary**, and she would be capable of interacting with the public occasionally.

7

(Tr. 22) (emphasis added).

Gomez argues the discrepancy between the ALJ's RFC, which does not include coworker limitations, and the above-referenced statement later in her decision that "coworker limitations *are* necessary" is internally inconsistent, and constitutes clear error requiring remand. Gomez explains, "if the ALJ meant to indicate that coworker limitations were necessary, she failed to impose any. This would be clear error. If this was not the ALJ's intention, she should have the opportunity to elaborate. This Court should not speculate." (Doc. #12 at 13). Gomez's argument, however, lacks merit, as the detailed analysis leading up to the ALJ's statement makes clear the inconsistency was merely a typographical or scrivener's error, as the Commissioner persuasively argues. Therefore, remand is not required.

Typographical errors in drafting do not require remand when the "ALJ's true meaning is easily discernible." *Barnes v. Comm'r of Soc. Sec.*, No. 16-13714, 2018 WL 1474693, at XX (E.D. Mich. Mar. 6, 2018), *report and recommendation adopted,* No. 16-13714, 2018 WL 1471440 (E.D. Mich. Mar. 26, 2018). In *Barnes,* the ALJ wrote both that the plaintiff did and did not have any severe impairments, and the plaintiff argued the ALJ's decision was internally inconsistent, just as Gomez does here. *Id.* at *2. Specifically, the ALJ in *Barnes* wrote that the plaintiff's depression/anxiety were medically determinable impairments at one point, but later in the decision, he wrote there was not a medically determinable mental impairment. Just like here, the Commissioner in *Barnes* argued that the ALJ's statement "was merely a scrivener's error," as the "context makes it clear that the ALJ meant to find that Plaintiff's depression was not medically determinable." *Id.* at *4. The Commissioner further argued that any internal inconsistencies amounted to no more than harmless error because of the context surrounding the ALJ's statements—specifically, the ALJ's analysis of the plaintiff's adverse credibility. The court agreed

8

with the Commissioner, and found the ALJ's statements reflected a typographical or scrivener's error. The court explained,

> In context, it is clear that the omission of the word "not" was a scrivener's err, as the ALJ goes on to discuss at length her conclusion that plaintiff does not have any severe impairments. The same is true of the Decision's language concerning depression/anxiety. The mistakes are regrettable given the matters at stake. However, the ALJ's true meaning is easily discernible for the analysis on each topic, requiring no further discussion concerning error. *Lund v. Colvin*, 2014 WL 1153508, at *4 n.3 (D. Minn. Mar. 21, 2014) (collecting cases showing that typographical errors are harmless); *McAllister v. Colvin*, 2017 WL 1190952, at *2 (E.D. Mich. Mar. 31, 2017).

*Id.* at *8, n. 2.

This case stands on all fours with *Barnes*, and similar case law[3]. Here, too, the context reveals the ALJ's RFC finding that Gomez *did not* require coworker limitations, and her typographical error does not require remand. First, the ALJ's analysis before and after the erroneous statement at issue shows she did not intend to impose any coworker limitations. The sentence immediately prior states, "the social limitations suggested by the State agency are not supported, as [Gomez] does not appear that socially limited by her own admission (Exhibit 3E)." (Tr. 22). Exhibit 3E is Gomez's function report, in which Gomez indicated that she does *not* have any problems getting along with family, friends, neighbors, or others. (Tr. 327). Gomez also indicated in her function report that her illnesses, injuries, or conditions do *not* impact her ability to get along with others. (*Id.*)(emphasis added). She wrote that she got along well with authority

---

[3] *See also Peasant ex rel. D.R. v. Comm'r of Soc. Sec.*, No. 12-CV-13288, 2013 WL 3814293, at *16 (E.D. Mich. July 22, 2013) (finding a typographical error constituted harmless error); *Martinez v. Astrue*, 2014 WL 310387, at *16 (N.D. Cal. Jan. 28, 2014) (holding that "the ALJ committed legal error by articulating an ambiguous RFC ..." but the error was harmless because "read in its proper context, it is clear" what the ALJ meant); *Peters v. Colvin*, 2015 WL 12670518, at *6 (E.D. Wa. Dec. 14, 2015); *Armstrong v. Colvin*, No. 6:11-CV-4172-VEH, 2013 WL 1180305, at *4 (N.D. Ala. Mar. 18, 2013) (looking at the full decision to establish context to determine whether the ALJ's error was merely a scrivener's mistake).

figures, and she had never been fired or laid off from a job because of problems getting along with other people. (*Id.*). The only social limitation Gomez indicated she had related to large crowds; she wrote, "I don't do well in large crowds, I am very nervous." (*Id.*). Accordingly, the record evidence cited by the ALJ, along with the preceding clarifying sentence, leaves no room for speculation as to her intent not to include any coworker limitations in the RFC. Similarly, the RFC's inclusion of a limitation that Gomez interact with the public "occasionally" is consistent with all of the foregoing evidence.

The ALJ's omission of a coworker limitation in the RFC was consistent throughout her written decision, as well as during the hearing, where none of the hypotheticals the ALJ provided to the VE contained a coworker limitation. (*See* Tr. 18, 73, 74, 75-76, 82-83). As the Commissioner persuasively argues,

> It would be odd indeed for the ALJ to impose a mental limitation in the RFC finding she did not ask the VE about, and then rely on the same jobs the VE identified without accounting for or in some way explaining how the additional mental limitation affected the VE's answers. Once again, a more logical reading of the discrepancy between the ALJ's mental RFC finding and mental RFC discussion yields the conclusion that a scrivener's error accidentally omitted an "un" from "necessary."

(Doc. #14 at 13).

In fact, throughout the entire decision, the only reference to a need for a coworker limitation is the one sentence at issue, which supports the Commissioner's argument that this sentence contains a mere typographical error. Finally, elsewhere in the decision, the ALJ indicates that Gomez is not as limited as she purports. For instance, the ALJ repeatedly writes, "the claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record", and "the medical records [] do not support Gomez's allegations of limitation." (*See, e.g.,* Tr. 19, 23).

In response to the above, though, Gomez argues "[q]uite obviously, the evidence cited by the ALJ in support of her conclusion did not support that conclusion at all." (Doc. #12 at 14). But far from "obviously" not supporting the ALJ's RFC, there is ample record evidence in support of the ALJ's findings. As noted above, Gomez specifically indicated in her function report that she does not have any problems getting along with family, friends, neighbors, or others. (Tr. 327).[4] And, at the hearing, Gomez testified that she would *not* have trouble getting along with coworkers if she had a job. (Tr. 62). Gomez also testified she would "[p]robably not" have trouble getting along with a supervisor if she had a job. (*Id.*). In response to the ALJ's questioning about her socialization, Gomez testified that she and her boyfriend "go to church a couple of times a month" with her boyfriend's parents, and go out to eat with his parents once a week. (Tr. 53). When the ALJ asked why Gomez believes she cannot work at any job, Gomez did not mention anything about her inability to get along with others—instead, she testified about her diabetes and related conditions, such as light headedness, dizziness, fatigue, nauseousness, tingling in fingers, and weakness. (Tr. 39-43, 50).

Gomez does not point to any record evidence indicating that she would need a *coworker limitation*. Instead, at best, Gomez points to evidence of her social impairments, such as her own statement that "I don't do well in large crowds, I am very nervous," and her hearing testimony in which she indicated that she grew uncomfortable even going out with family members, and that she could handle small groups, but grew anxious in larger crowds. However, this evidence does not undermine the ALJ's decision not to include coworker limitations, and is more in line with the

---

[4] Similarly, Gomez's mother indicated in a third-party function report that while Gomez does not do well with "large crowds," she had no difficulties getting along with others, and did "very well with teachers." (Tr. 319-20).

11

limitation the ALJ did adopt in the RFC, limiting Gomez to interacting with the public only occasionally. (Tr. 18).

In sum, the ALJ's analysis of the record evidence is consistent with her decision not to include a coworker limitation in the RFC, and that aspect of the RFC is supported by substantial evidence. Accordingly, the ALJ's later statement about a coworker limitation being "necessary" was clearly a typographical error that does not require remand.

> 2. *The ALJ's finding that Gomez Could Perform "Other Work" was Supported by Substantial Evidence*

The VE testified that, assuming a hypothetical person of Gomez's age, education, work experience, and skill set, with Gomez's RFC, there is work available in the national economy that such a person could perform. (Tr. 73). Specifically, the VE testified that examples of unskilled sedentary work would be assembler, with a national number of 35,000, inspector, with a national number of 12,000, or packager, with a national number of 71,000. (Tr. 74). On cross examination, Gomez's attorney then questioned the VE about the identified jobs, and whether they still existed in the modern economy:

> [Counsel]: The jobs you've identified [] the last one you provided was packer and you gave me the DOT Code. According to the DOT that is a bandolier straightener and stamper [i]n the ordinance industry," "[l]ast updated in 1977", includes "[p]reparing fabric bandolier belts for packing . . . does that still exist in the modern economy or is that all done robotically?
>
> [VE]: Well, I have never been to an ordinance manufacturing factory so I – I guess I really can't specifically answer that. That is just one example of many sedentary packager. [] I mean these – I'm sure you're aware that [] there are no benevolent sources which list incidents by specific DOT Number so the best we can do is provide example DOT numbers within an occupational group.
>
> [Counsel]: [] I just wanted to make sure the [] representative DOT Code actually corresponds to a job that still exists in the modern economy.
>
> [VE]: Not direct specific knowledge, no because I have not seen it.

> [Counsel]: The inspector job turns out to be a dowel inspector for woodworking again last updated in 1977. Do you have any knowledge that that job still exists in the modern American [] economy?
>
> [VE] That specific job, no, I have seen – I mean I have seen many sedentary packager positions, inspector positions. The specific dowel inspector, no, but it would be the same type of activities..
>
> [Counsel] Again, I'm just using the DOT Codes you provided[.] [A]gain the [] assembler position was for [] the optical goods industry.. It attaches nose pads and temple pieces to optical frames. Again, I – last updated in 1977 so my question remains the same. Does this job still exist in America in 2017?
>
> [VE] We can [] know that at least similar type jobs [] exist [].
>
> [Counsel]: But not that job?
>
> [VE] You know unfortunately the whole DOT is antiquated but it's all we have right now.

(Tr. 78-80).

Gomez now argues that the VE's justification for his conclusion that there are other jobs in the economy which a hypothetical person with Gomez's RFC can perform is not sufficient, due to his testimony that the DOT is "antiquated" and he was not sure if the jobs he specified actually existed currently. She therefore concludes that the ALJ's adoption (at Step Five) of the VE's testimony regarding other work is not based upon reliable evidence, and therefore, is unsupported by substantial evidence. While this argument raises a legitimate criticism about the data source on which vocational experts base their findings in Social Security disability hearings, it does not establish that this aspect of the ALJ's decision was not supported by substantial evidence.

Preliminarily, the Court notes that the VE here did identify three jobs based on the current DOT that were available in significant numbers that a person with the hypothetical RFC could perform. The VE never testified that those jobs were not available. At most, the ALJ indicated that he lacked "direct specific knowledge" about these jobs because, for instance, he had "never

been to an ordinance manufacturing factory." But Gomez fails to cite any case law or regulation that requires an ALJ to have such personal knowledge of available jobs.

Recent U.S. Supreme Court case law also belies Gomez's argument. On April 1, 2019, the Court decided *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019), a Social Security case in which the claimant argued that the VE's refusal to provide underlying data (a market survey) substantiating his opinion that other work existed in the economy for the hypothetical claimant in question prevented the ALJ from finding his testimony reliable, and precluded substantial evidence from supporting the ALJ's Step Five decision. The Court rejected the claimant's argument, holding that "[a] vocational expert's refusal to provide private market-survey data upon the applicant's request does not categorically preclude the testimony from counting as 'substantial evidence.'" *Id.* at 1152. The Court stressed that such an "inquiry, as is usually true in determining the substantiality of evidence, is case-by case. It takes into account all features of the vocational expert's testimony, as well as the rest of the administrative record, and defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1157. In so holding, the Court explained that both parties agreed "[a]ssuming no demand, a [VE's] testimony may count as substantial evidence even when unaccompanied by supporting data." *Id.* at 1155. The Court also explained, "[i]n some cases, the refusal to disclose data, considered along with other shortcomings, will undercut an expert's credibility and prevent a court from finding that 'a reasonable mind' could accept the expert's testimony. But in other cases, the refusal will have no such consequence. Even taking it into account, the expert's opinion will qualify as 'more than a mere scintilla' of evidence supporting the ALJ's conclusion. Which is to say it will count . . . as substantial [evidence]." (*Id.* at 1156) (internal citation omitted).

Here, as the Court discussed in *Biestek*, deference should be afforded to the presiding ALJ, "who has seen the hearing up close," whose credibility determinations must not be disturbed absent a lack of substantial evidence. When considering the full testimony of the VE, it is clear that substantial evidence does support the ALJ's reliance on the VE's testimony that there are other jobs Gomez could perform. First, the VE testified he was familiar with jobs that exist in the national economy, he had current and extensive experience with job placement for people with disabilities, and he needed no additional information from either the ALJ/Court or Gomez before arriving at a conclusion. (Tr. 69-71). He had been a VE with the Social Security Administration for over the past 25 years, and he acts as a VE in similar settings 16 days a month – approximately four days a week. (Tr. 70). He testified that in the past 12 months, on average, he placed 65-66 individuals with disabilities, and he visited job sites a few times a year, as a lot of placing is done through the internet. (Tr. 71). He is a Certified Rehabilitation Counselor, and his educational background includes a Master's degree in vocational rehabilitation counseling, and a master's in psychology. (Tr. 71-72). He also testified that his testimony was consistent with the Dictionary of Occupational Titles, and that he was sufficiently familiar with Gomez's file and exhibits, as well as her testimony. (Tr. 68-69). Even though he acknowledged the DOT was "antiquated," and admitted to not visiting certain industries to see whether those jobs existed in 2017, he also acknowledged that the DOT was the relied-upon standard in his industry -- "it's all we have right now." (Tr. 80).

The VE's mere characterization of the DOT as "antiquated" does not entirely undercut his testimony about whether other job exists that Gomez could perform considering her RFC, age, experience. First and foremost, the VE testified about the three available jobs based on the DOT, and never disavowed that testimony. Moreover, the VE acknowledged that the specified DOT

15

codes were merely non-exhaustive *examples* of the type of work the hypothetical claimant could perform. (Tr. 74, 79-80) ("Examples would include assembler . . . A representative DOT Number is . . ."; "That is just one example of many sedentary packager [jobs] . . . so the best we can do is provide example DOT Numbers within an occupational group. . . . I have seen many sedentary packager positions, inspector positions. The specific dowel inspector, no, but it would be the same type of activities. . . . we can know that at least similar type jobs exist [to the particular assembler position identified by the VE]"). Importantly, while the VE recognized that he was not personally aware as to whether the specified jobs actually existed in 2017, he affirmatively represented that other similar positions, such as sedentary packager and inspector positions with "the same type of activities," did exist. (*Id.*).

Gomez does not provide any meaningful response as to why this testimony from the VE does not provide substantial evidence for the ALJ's Step Five finding. Instead, in support of her argument, Gomez explains "when the ALJ admits his information is derived from an 'anti-quated' publication and he cannot vouch for its usefulness by direct knowledge or experience,' the job information in question simply is not reliable." (Doc. #12 at 16-17). However, this appears to constitute an improper request for this Court to reevaluate the credibility and reliability of the VE's testimony, rather than determine if substantial evidence supports the ALJ's conclusion. *See Rogers, supra.* The rest of the VE's testimony, when considered beyond his opinion that the DOT should be updated, provides such substantial evidence. Accordingly, there is no reversible error here.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(Doc. #14)** be **GRANTED**, Gomez's Motion for Summary Judgment **(Doc. #12)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: June 11, 2019  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
  United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

*Note these additional requirements at the direction of Judge Cleland:*

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D.

Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 11, 2019.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
